# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**MICHAELLA REBECCA FITHIAN**,

          Plaintiff,

    v.

**NANCY A. BERRYHILL**,[1]

          Defendant.

Case No. 3:16-cv-923-SI

**OPINION AND ORDER**

Jeffery H. Baird, DELLERT BAIRD LAW OFFICES, PLLC, 6525 California Avenue SW #101, Seattle, WA 98136. Of Attorneys for Plaintiff.

Billy J. Williams and Janice E. Hébert, UNITED STATES ATTORNEYS OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204-2902; Ryan Lu, OFFICE OF THE GENERAL COUNSEL SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Of Attorneys for Defendant(s).

**Michael H. Simon, District Judge.**

      Michaella Rebecca Fithian ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application

for Disabled Adult Child ("DAC") and Supplemental Security Income ("SSI") benefits under

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Commissioner Carolyn W. Colvin as the defendant in this suit.

Titles II and XVI of the Social Security Act. For the following reasons, the Court reverses the Commissioner's decision and remands for calculation of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Summary of Plaintiff's Medical History

Since the age of four, Plaintiff has been treated for an immune deficiency syndrome. AR 26, 73. Every three weeks, Plaintiff spends six hours or more receiving an intravenous immunoglobulin ("IVIG") treatment administered through a portcath in her right chest and a catheter running between her jugular and her heart. AR 28; ECF 14 at 4.[2] Occasionally, Plaintiff has severe reactions to the treatment. AR 70. Since 2010, she has been routinely prescribed pain medications, including Oxycodone, to ease the severe pain she suffers during and after these treatments, and to help alleviate pain associated with the portcath. AR 28, 33, 71-73. She has a history of opioid dependence related to these pain medications. AR 33. Plaintiff also suffers from a variety of mental health impairments, including an impulse control disorder involving skin-picking, attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, and an anxiety disorder. AR 26, 34.

## B. Plaintiff's Application

On May 18, 2012, an application was filed on Plaintiff's behalf seeking SSI and DAC benefits, alleging disability beginning April 20, 2012. AR 231. Plaintiff was 17 years old at the alleged disability onset date and turned 18 after her application was filed. AR 27. The state Disability Determination Services ("DDS") denied the claim initially and upon reconsideration. AR 21. Plaintiff thereafter requested a hearing before an Administrative Law Judge ("ALJ"). AR 21. At the administrative hearing, Plaintiff appeared with her attorney and her mother, and testified. AR 21. A vocational expert also testified. AR 21. The ALJ ruled that Plaintiff was not

---

[2] In Plaintiff's words: "I don't have enough of an immune system on my own to fight even your common cold. So I have to go in and get other people's. It's essentially a blood transfusion, only with the . . . protein part of the white blood cells." AR 70.

disabled under the Social Security Act. AR 22. The Appeals Council denied Plaintiff's request

for review, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff

now seeks judicial review of that decision.

## C.  The Sequential Analyses

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
    impairment or combination of impairments is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
    this impairment must have lasted or be expected to last for a continuous
    period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
    claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
    §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
    impairment, the analysis proceeds to step three.

3.        Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.        Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.        Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**D.  The ALJ's Decision**

ALJ Riley J. Atkins began his opinion by explaining that to be eligible for benefits, Plaintiff must have been disabled since May 18, 2012, the date of her application for benefits. AR 21. The ALJ then applied the sequential analysis. AR 19-32.

At step one, the ALJ determined that Plaintiff had not performed substantial gainful activity from the alleged onset date until the date of the hearing. At step two, the ALJ found that Plaintiff suffered from severe impairments before age 18. These impairments include an immune deficiency syndrome, bipolar disorder, anxiety disorder, ADHD, an impulse control disorder involving skin-picking, and a history of opioid dependence. These impairments continued after Plaintiff turned 18, except that Plaintiff's impulse control improved with medication. AR 37. At step three, the ALJ found that Plaintiff did not satisfy the listings for either pre- or post-age 18 disabilities.

The ALJ considered the medical opinions of Dr. Heather Jones, Plaintiff's treating psychiatrist (accorded "very little weight"); three non-examining medical experts Dr. Dorothy Anderson, Dr. Martin Lahr, and Dr. Richard Alley (accorded "great weight" to portions of their opinions); Dr. Daniel Kriz, an examining medical expert (noting disagreement between Dr. Kriz's opinion and Dr. Jones's); Plaintiff's subjective testimony (accorded "some weight"); and a lay witness, Mr. Bryson Slothower, Plaintiff's teacher (accorded "some weight"). The ALJ then assessed Plaintiff's RFC as capable of less than the full range of sedentary work, and noted the following limitations: Plaintiff can engage in overhead work with her right arm only occasionally; she should avoid severe workplace hazards including working around heights or dangerous machinery due to her opioid dependence; she can engage in occasional, brief

interactions with the general public and coworker peers; she is capable of sustaining concentration, persistence, and pace for routine, simple tasks, and occasionally more complex tasks, but is potentially unable to sustain more complex work. AR 39. At step four, the ALJ found that Plaintiff had no past relevant work. AR 47. At step five the ALJ found that Plaintiff could perform unskilled work in jobs such as an assembler or a packager and loader, that existed in significant numbers in the local and national economies.

## DISCUSSION

It is undisputed that Plaintiff suffers certain medically determinable impairments and that she suffered from those impairments throughout the relevant period from April 20, 2012 until the time of the administrative hearing. The dispute is whether those impairments render Plaintiff disabled such that she is entitled to benefits. Plaintiff argues that in answering that question in the negative, the ALJ improperly rejected her subjective testimony, her treating psychiatrist's opinion, and her teacher's lay opinion.

## A.  Plaintiff's Subjective Testimony

The ALJ determined that although Plaintiff's medically determinable impairments could cause some of her symptoms, Plaintiff's subjective testimony regarding the severity of her symptoms was "dramatic" and unsupported by Plaintiff's reports to her treatment providers during treatment. AR 46. The ALJ awarded Plaintiff's statements only some weight and determined Plaintiff's subjective symptoms did not require any additional limitations beyond the RFC. Plaintiff argues that the ALJ did not provide clear and convincing reasons for rejecting her subjective testimony with respect to fatigue.

### 1.  Standards for Evaluating a Claimant's Subjective Testimony

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective

medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

## 2. Plaintiff's Subjective Testimony Regarding Fatigue

At the administrative hearing, Plaintiff testified that she needed up to four ten- or fifteen-minute breaks during a normal four-hour work shift at her part-time job. AR 87-88. She also testified that a normal reaction to her IVIG treatments was that she would be "unable to move from [her] bed . . . for at least two days after," experienced "physical heaviness," and could not work at all during that time. AR 71-72.

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting her testimony, specifically with respect to the fatigue she felt after her IVIG treatments and as a side-effect of some of her many medications. The ALJ provided three reasons for disregarding that testimony: (1) the record suggested that Plaintiff applied for SSI benefits to become financially independent; (2) Plaintiff only reported her post-IVIG fatigue once, during her exam with Dr. Kriz; and (3) Plaintiff planned to continue her schooling in the hopes of becoming a nurse practitioner or certified nursing assistant ("CNA").[3] AR 46. The ALJ determined that to the extent Plaintiff's testimony was credible and corroborated by other evidence, the limitations in the RFC were justified, but declined to find any additional limitations.

Although Plaintiff testified that "she felt she was disabled partially due to fatigue and grogginess from her medications," the ALJ determined that Plaintiff's repeated complaints to her treatment providers that her family was a source of anxiety and a trigger for her other mental health issues, strongly suggested that Plaintiff had "applied for disability as a means of becoming financially independent." AR 46-47. The ALJ based his decision in part on Plaintiff's report to Dr. Pavan Somusetty that she was applying for SSI because she had difficulty tolerating her day-to-day stressors, including her mother and sister. AR 47 (*citing* AR 1007 and 1009).

The ALJ's determination is not supported by substantial evidence in the record. For instance, although Plaintiff reported to Dr. Somusetty that she planned to apply for SSI, she did not suggest that she was doing so to gain financial independence. Instead, Plaintiff indicated that she planned to apply because of her inability to deal with her day-to-day stressors. As the ALJ

---

[3] The Court notes that the ALJ also cited Plaintiff's participation in Zumba as a reason to discredit her testimony, and specifically her testimony regarding her ability to stand, walk, and sit. AR 46. The ALJ found that "Zumba is a highly aerobic workout and the claimant's ability to engage in Zumba is incredibly inconsistent with her testimony." AR 46. Insofar as Plaintiff challenges that finding, the ALJ did not err.

noted, there is support in the record that interacting with her mother and sister can trigger Plaintiff's anxiety. *See, e.g.*, AR 536 (Dr. Jones in 2010 explaining that Plaintiff is upset by her sister); 645 (reporting to Dr. Jones in 2012 "at length," about problems with the relationship between Plaintiff and her sister); 736 (Dr. Robert Dobres reporting "one of the main stressors in [Plaintiff's] life is her relationship with her 20-year-old sister"). There is no support in the record, however, for the ALJ's conclusion that Plaintiff applied for benefits for the purpose of achieving financial independence from her family.

The ALJ also discounted Plaintiff's fatigue testimony because "the record simply does not show that the claimant has ever reported this to her providers." AR 46. This conclusion is not supported by the record. *See, e.g.*, AR 380 (Dr. Kriz explaining that "[s]he said she gets very fatigued about a week and a half after each infusion"); 682 (Dr. Jones reporting fatigue); 112 (Dr. Anderson explaining that Plaintiff experiences "fatigue w/ this [her immune disorder]").

Additionally, when the ALJ pushed Plaintiff about why there was not more evidence of post-IVIG fatigue in her medical record, Plaintiff responded "I don't know if they have any recent record of it . . . because it's been a pretty consistent thing. I've had [IVIG treatments] since I was four years old, so there probably wouldn't be any record of it." AR 73. Consistent with Plaintiff's explanation, the portions of the record on which the ALJ relies as evidencing successful treatment or failing to evidence fatigue relate to Plaintiff's IVIG treatment generally, or to the moments when she is receiving the treatment; they do not specifically address Plaintiff's condition in the days or weeks following each treatment. *See, e.g.*, AR 540 (Dr. Michael Barrett explaining in January, 2011, that Plaintiff was "[t]olerating her IVIG well at this time and catheter is working well"); 751 (Dr. Dobres reporting that Plaintiff's "monthly IV's are a comforting ritual for her because she doesn't have to think about anything for the 5

hours she is getting her IV medication"). Thus, this reason provided by the ALJ is not a clear and convincing reason for rejecting Plaintiff's testimony regarding fatigue.

Further, the ALJ noted that Plaintiff's plan eventually to return to school to become a nurse practitioner or CNA was "highly inconsistent with her allegations of disability." AR 47. Although a level of activity that is inconsistent with claimed limitations has a bearing on a claimant's credibility, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Neither should they be penalized for having hopes and dreams. The ALJ erred.

## B. Medical Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the

opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ effectively rejects an opinion when he or she ignores it. *Smolen*, 80 F.3d at 1286.

### 1. Dr. Jones's Mental Health Assessment

Plaintiff offered Dr. Jones's written opinion as to the limiting effects of Plaintiff's mental health impairments. AR 707-12. Dr. Jones is Plaintiff's treating psychiatrist, and an M.D. In her mental assessment, Dr. Jones opined that Plaintiff was markedly limited in her ability to maintain attention and concentration for extended periods (the two hours between work breaks), travel in unfamiliar places or ride public transportation, and complete a normal workday and workweek without interruptions from psychological symptoms. AR 711-12.

The ALJ gave Dr. Jones's opinion regarding Plaintiff's concentration and attention symptoms little weight because it was inconsistent with Plaintiff's own reports and because Plaintiff's treatment records "show the claimant's ADHD is generally well controlled with

[medication], the claimant has no cognitive deficits on exam, and on the BASC-2 (self-report) the claimant was asymptomatic." AR 45 *citing* AR 636 (Dr. Christopher Tongue noting that Plaintiff delivered a "markedly asymptomatic self-report" and specifically denied symptoms relating to ADHD) and 383-84 (Dr. Kriz noting that Plaintiff's ADHD was well controlled with Concerta); *see also* AR 659 (Dr. Jones reporting that "anxiety and [attention] is under adequate control"). The ALJ also noted that in an exam by Dr. Kriz, an examining psychologist, Plaintiff performed adequately in terms of executive functioning, attention, and concentration on testing. AR 45 *citing* 383-84 (Dr. Kriz noting that Plaintiff "performed adequately on executive functioning and attention/concentration tests . . . in a controlled environment free from anxiety and distractions"). The Court finds that these are specific and legitimate reasons for rejecting Dr. Jones's opinions on concentration and cognitive ability.

The ALJ did not wholly reject Dr. Jones's opinion that Plaintiff was markedly limited in her ability to travel to unfamiliar places or use public transportation, but discounted it in favor of the medical source opinions of DDS examiners, Dorothy Anderson, Ph.D., and Richard Alley, M.D. Dr. Anderson opined Plaintiff should have only occasional contact with the public and her coworker peers, and that short, structured encounters were "okay." AR 44 (*citing* AR 139). Dr. Alley also concluded that Plaintiff should have only "little contact with the public due to her immune deficiency disorder, and should have no more than occasional, brief interactions with the public and her coworkers because of her compromised immune system." AR 45. In light of the similar opinions from all three doctors, the ALJ reasonably concluded that Plaintiff's interaction with the public and her peers should be limited, and adequately incorporated that limitation into the RFC.

The ALJ failed, however, to provide a specific and legitimate reason for rejecting Dr. Jones's opinion that Plaintiff was markedly limited in her ability to complete a normal workday and workweek without interruptions from psychological symptoms. AR 711-12. The ALJ did not address this opinion and indeed, gave "great weight" to Dr. Anderson's opinion that Plaintiff "was capable of carrying out simple, routine tasks but *would be limited* in her ability to consistently carry out detailed tasks *secondary to occasional disruption in pace due to a combination of physical fatigue, side effects of medication, and psychiatric components*." AR 44 (*citing* AR 139) (emphasis added). Because the ALJ failed to give any reason for rejecting it, and failed to incorporate this limitation into Plaintiff's RFC, the ALJ erred.

## 2. Dr. Jones's Opinion Regarding Plaintiff's Physical Limitations

Dr. Jones also submitted a written opinion as to Plaintiff's physical limitations. AR 706-714. Dr. Jones opined that Plaintiff could occasionally lift ten pounds; must periodically alternate sitting and standing to relieve pain or discomfort; and that pushing and pulling was severely limited in Plaintiff's upper extremities due to joint pain and risk of damage to the portcath and moderately limited in Plaintiff's lower extremities due to joint pain. AR 708. Dr. Jones also opined that Plaintiff suffered manipulative limitations in that she could only occasionally reach, handle, finger, and feel. AR 709. The ALJ gave Dr. Jones's physical assessment "very little weight" because Dr. Jones had treated Plaintiff only for her mental health. AR 45. Because substantial evidence in the record supports the ALJ's conclusion, and because a reviewing physician with a more relevant practice area concluded that Plaintiff was not limited in her ability to manipulate objects, the ALJ's conclusion is upheld.

Plaintiff argues that Dr. Jones was qualified to opine on Plaintiff's physical limitations because Dr. Jones is an M.D., and because Dr. Jones had regular, lengthy interactions with

Plaintiff. Plaintiff further argues that the ALJ failed to provide sufficient reasons to reject Dr. Jones's opinion regarding Plaintiff's manipulation limitations.

The ALJ addressed Dr. Jones's manipulation limitation, albeit indirectly, by giving "great weight" to the opinions of non-examining, non-treating DDS reviewers Dr. Anderson and Dr. Martin Lahr, M.D. These doctors opined that Plaintiff had "no limitation moving about and manipulating objects." *See* AR 37, 112. It is true that Dr. Jones is an M.D., but all psychiatrists are M.D.'s, and although some psychiatrists may treat or specialize in physical impairments, not all do. Thus, the mere fact that Dr. Jones is an M.D. does not mean her physical-limitation opinion deserves controlling weight. Indeed, the record shows that she treated Plaintiff for her mental health issues and referred Plaintiff to other providers for treatment of the physical aspects of Plaintiff's "Pain Disorder with Psychological Features." AR 659. Because Dr. Jones did not treat Plaintiff for her physical conditions, she is not a treating physician for those issues. The ALJ resolves conflicts in the medical evidence. It was a rational reading of the record for the ALJ to give greater weight to the opinion of Dr. Lahr[4], an M.D. who reviewed Plaintiff's entire medical file, regarding Plaintiff's manipulation limitation.

## C. Lay Witness Opinion

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's

---

[4] Although Dr. Lahr and Dr. Anderson jointly signed the medical opinion, Dr. Anderson's opinion, as a reviewing Ph.D. should not carry more weight than Dr. Jones's opinion as Plaintiff's treating psychiatrist.

testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores uncontradicted lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The ALJ considered a lay witness opinion statement from Plaintiff's teacher, Bryson Slothower. Mr. Slothower noted that Plaintiff missed many school days and lacked engagement in school, due to medical complications. AR 36. The ALJ gave "some weight" to this opinion. AR 37. Indeed, the ALJ asked the vocational expert whether, "a hypothetical claimant were to be absent from the workplace at unpredictable times" on average, four to eight hours per week, could sustain employment in the sample occupations the vocational expert listed. ECF 9-4 at 46. The vocational expert responded that "over time, that degree of absence from work would lead to

not sustaining competitive employment." *Id.* The ALJ also gave "great weight" to

Mr. Slothower's opinion that Plaintiff had no problem in acquiring and using information, and no

problem to a slight problem in attending to and completing tasks. AR 37.

The ALJ did not explain why he gave Mr. Slothower's opinion about Plaintiff's frequent

absences only "some weight," did not incorporate this opinion into the RFC, and did not

reference any evidence in the medical record that contradicts Mr. Slothower's opinion. Thus, the

ALJ erred in ignoring Mr. Slothower's opinion. As discussed below, this error was not harmless.

**D. Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation

omitted). Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v.*

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the

utility of further proceedings. A remand for an award of benefits is appropriate when no useful

purpose would be served by further administrative proceedings or when the record has been fully

developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A

court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence

that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act.

*Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court.

*Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for

the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal
> error, such as failing to provide legally sufficient reasons for
> rejecting evidence. If the court finds such an error, it must next

review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.

If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

As discussed above, the ALJ improperly discounted Plaintiff's subjective testimony with respect to fatigue and the limitations it causes, including missed days. The ALJ also failed properly to evaluate Dr. Jones's medical opinion regarding Plaintiff's psychologically-related fatigue and inability to maintain a normal work schedule. Finally, the ALJ did not properly evaluate Mr. Slothower's opinion that Plaintiff was regularly absent. Considering the record as a whole, the Court finds that it is fully developed and free from conflicts and ambiguities.

Plaintiff's testified that often after her IVIG treatments she would call in sick and that even when she worked she required multiple breaks within a four-hour shift because of physical and mental exhaustion. Mr. Slothower's opinion, that Plaintiff was regularly absent from school, corroborates Plaintiff's testimony. This conclusion is also supported by Dr. Jones's assessment that Plaintiff was markedly limited in her ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and her ability to "complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 711. The record shows that Plaintiff's medical conditions significantly interfered with her ability to participate at a normal pace in long-term activities such as work and school.

Moreover, Dr. Anderson's medical opinion—which the ALJ gave great weight, and incorporated into Plaintiff's RFC—was that Plaintiff "was capable of carrying out simple, routine tasks but would be limited in her ability to consistently carry out detailed tasks secondary to occasional disruption in pace due to a combination of physical fatigue, side effects of medication, and psychiatric components." AR 44 (citing AR 139). Additionally, Plaintiff's contemporary statements to her treatment providers support that her medical conditions caused repeated absences and interfered with her ability to participate in her regular school. AR 540 (Dr. Barrett in January, 2011, reporting that Plaintiff "[i]s now doing online school due to missing classes; getting good grades but has fallen behind due to ill days").

Plaintiff persuasively argues that had the ALJ fully credited Dr. Jones's and Mr. Slothower's opinions and Plaintiff's testimony, he would have accepted the vocational expert's assessment that a person with Plaintiff's limitations could not obtain competitive employment and was therefore disabled. The vocational expert testified that a hypothetical

person who would "be absent from the workplace at unpredictable times," on average amounting to "four to eight hours per week," would be unable to sustain competitive employment. AR 99. Similarly, if a person required a 15-minute break every hour, that person would not be employable for full-time work in the jobs the vocational expert identified. AR 100. The record demonstrates that Plaintiff is such a person. A remand for benefits is therefore appropriate.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is REVERSED and REMANDED for an award of benefits.

**IT IS SO ORDERED**.

DATED this 26th day of April, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge